### In re COLEMAN.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. ATTORNEY AND CLIENT ⬅️44—MISCONDUCT—WHAT CONSTITUTES.

　　Where respondent, who had previously acted as attorney for a widow of small means, induced her to give him part of her funds to invest in a questionable gold-mining scheme, representing that the profits would be large and the venture was safe, he was guilty of professional misconduct, warranting censure and suspension; for, though the specific relations of attorney and client did not then exist, respondent's power over the widow rested mainly upon his membership in the legal profession, and he had acted as her adviser.

　　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. ⬅️44.]

2. ATTORNEY AND CLIENT ⬅️46—OFFENSES—DISBARMENT.

　　In such case, the fact that respondent believed the venture was a meritorious one, and he acted in good faith, is no defense.

　　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 71; Dec. Dig. ⬅️46.]

In the matter of John M. Coleman, an attorney charged with professional misconduct. On motion to confirm referee's report. Respondent suspended from practice.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City (Henry Fillcocks, of New York City, of counsel), for petitioner.

John M. Coleman, of New York City, pro se.

PER CURIAM. This proceeding is brought by the Association of the Bar of the City of New York, as petitioner, to discipline the respondent, an attorney, for alleged unprofessional conduct. It appears from the evidence and the report of the official referee that in

the fall of 1911 the respondent had an opportunity to acquire an interest in a gold-mining venture in the republic of Mexico, provided he could put up with one Frost a certain amount of money; that the interest in question consisted of a one-half interest in Mr. Frost's one-fifth option upon an option to purchase and work a mining claim in Mexico said to contain gold; that the respondent himself was without funds to enter upon this enterprise, and in casting about to get the money which was needed he applied to the complaining witness, at that time Mrs. Rinckenberger, a widow, now remarried and known as Mrs. Starace, and by means of representing to her that he would secure an interest for her in the mining venture if she would turn over to him $1,000, which would bring her speedy riches and relieve her of the hard work in which she was then engaged, he induced her to give him $1,000 in two sums of $500 each.

Mrs. Rinckenberger was a poor woman, working for small wages, and had in savings banks about $2,000, which had come from her husband. Some time prior to July, 1911, respondent had been employed by her to collect a small sum of money belonging to the estate of her deceased husband. This he succeeded in doing, and turned the amount, less his fee, over to her. This arrangement appears to have been entirely satisfactory to her. A few days after this transaction was closed, respondent went to see Mrs. Rinckenberger, and called her attention to the mining business, and told her that it was "something grand"; that he expected to make a fortune himself, and said he would see Mr. Frost about getting some more stock. Shortly after this interview respondent told Mrs. Rinckenberger that Mr. Frost said "it was all right; that he will take me in if I give him $500 to invest in that as a stockholder." The next day Mrs. Rinckenberger drew from the Greenwich Savings Bank all of her deposits there, something over $400, and made up the balance of the $500 out of cash in hand, and gave it to respondent at her house. As to the other $500, the respondent accompanied Mrs. Rinckenberger to the Union Dime Savings Bank, where she drew out the amount, turned it over to him, and he gave her a receipt. The receipt which he gave her for the first sum of $500 was in the form of a letter as follows:

"This is to state that I have received $500 from you, to be used according to my best judgment in securing for you an interest in a mine, which I explained to you. If the present plan to organize the company and place the machinery, etc., should fail, it will be known by September 1st, and in that event your money is to be returned to you within 90 days, and this I guarantee."

The receipt for the second $500 ran as follows:

"Received of Marie Rinckenberger the sum of $500, to be returned at the end of 12 months from this date, with all accumulated interest and profits thereon."

The respondent's story is that he considered that he was borrowing this money from his client, and that he would be under an obligation to return it to her, and that he intended also to return to her a large proportion of the profits which he expected to make out of the ven-

ture, although there is no document shown and no agreement proven by which he undertook or promised to give her any share of the profits at all. The enterprise never came to anything, no company was formed, no stock was issued, no machinery purchased, and the whole thing fell by the wayside. Mrs. Rinckenberger, then Mrs. Starace, frequently visited respondent's office, and often called upon him, and called up on the telephone, and received assurances that the business was going on prosperously. Ultimately the respondent made explanations to her which were evasive and generally unsatisfactory. Later on he gave her a series of notes, representing the amount which he had received from her; but these notes were not paid, and were put in suit, and at the time these proceedings were initiated none of the judgments thereon had been paid. It appears, however, from the report of the official referee, that, pending the proceedings before him, respondent did repay to his 'client a considerable portion of the money which he owed her.

[1] The respondent's first contention by way of defense to the charge is that the evidence fails to show that the relation of attorney and client existed between the complainant and the respondent at the time the respondent obtained the money. It clearly appears that it was the confidential relationship created through the satisfactory services rendered by the respondent to the complainant which induced the latter to readily accept the respondent's advice and act upon his judgment. Although the particular matter in which the respondent had been employed by the complainant was closed, in an affair like the transaction under consideration it is reasonable to assume that the complainant dealt with the respondent as a lawyer, and practically as her legal adviser. It surely is not too much to say that the respondent's relations to the complainant were such at the time that his statements and representations to her had all the influence and convincing force that legal advice of an attorney would be likely to convey to a client. It must be presumed that the respondent so understood, and therefore fully appreciated the responsibility he was undertaking in obtaining the money. In the circumstances, it is clear that the respondent's power over the complainant rested mainly upon his membership in the legal profession and his right to the title of lawyer. This French woman, speaking our language indifferently, ignorant of business generally, and having no knowledge of the mining business, testified, and doubtless truthfully, that she relied upon the respondent's advice and judgment because she regarded him as her attorney.

Specific contractual relations of attorney and client are not always necessary to create professional obligations, for which a lawyer may be held to account to the court of which he is an officer. The respondent owed it to himself, if he desired to be classed as an upright and honorable man, to inform his client of the hazardous character of the investment into which her meager funds were being placed. His membership in the legal profession imposed upon him a similar obligation. He was a man of experience and thoroughly understood the risks. Those duties were disregarded and ignored. Instead, he pictured to her in alluring words the soundness of the investment and

the delights of speedily acquired wealth. No element of beneficence or desire on the part of the respondent to aid the complainant is shown in the transaction. Having learned through his professional relations with Mrs. Starace that she had a little money saved up for future need, he obtained it in the manner shown in the record herein, that he might acquire for himself an interest in a mining venture.

[2] It is not an explanation that can be accepted as sufficient to exonerate the respondent to say that he believed the venture was a meritorious one and that he acted in good faith. This is urged by the respondent as a second defense. It cannot prevail. It must be said that, in the procurement of the money in question here by the respondent, the complainant was deceived by unwarranted representations of the respondent, and that thereby she was induced to part with her money. Had the respondent been dealing with an equal in experience and intelligence, his conduct would be less reprehensible, and might not have amounted to deceit. In the case at bar, it was ample to accomplish the respondent's purpose.

We cannot allow conduct of this character to pass unrebuked. The respondent is worthy of severe censure for his actions towards his client, and for those actions, in addition to censuring him, he is suspended from practice for six months, with leave to apply for reinstatement at the expiration of that term, upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon. Settle order on notice.