In the Matter of JOHN M. COLEMAN, an Attorney, Respondent.

First Department, June 15, 1917.

**Attorney at law suspended for conversion of moneys delivered to him for use in paying referee's fees — circumstances not excusing misconduct — intent to repay, no excuse.**

Attorney at law suspended from practice for converting to his own use moneys paid to him to be deposited with a referee in payment of the latter's fees and disbursements, so as to secure the delivery of the referee's report.

Failure to so apply such money is not excused by the fact that a doubt existed in the mind of the attorney and his associate as to the soundness of the referee's conclusions, and by the fact that pending disciplinary proceedings had disrupted his business and left him in a highly agitated state of mind.

Under no circumstances is an attorney warranted in using his client's money as his own, and an intent to repay is no excuse for such misconduct.

DISCIPLINARY PROCEEDINGS instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*George E. Quigley,* for the respondent.

CLARKE, P. J.:

The respondent was admitted to the bar in July, 1906. Upon a charge of unprofessional conduct preferred by the present petitioner, this court, on December 30, 1915, directed that he be suspended from practice for six months, and an order to that effect was entered on January 25, 1916. (*Matter of Coleman,* 170 App. Div. 537.) Prior to the expiration of such term of suspension, a supplemental petition was filed against the respondent which charges, in substance, that he converted to his own use the sum of $218 which he received from Messrs. Murray, Prentice & Howland upon the distinct understanding that the said sum was to be used solely for the purpose of paying the fees and disbursements of the referee in a proceeding conducted by him in behalf of the Cornell Construction Company, for which Murray, Prentice & Howland were acting as general counsel.

It appears that in April, 1915, the respondent called upon William Roberts, an attorney associated with the firm of Murray, Prentice & Howland, general counsel for the Cornell Construction Company, and informed Roberts that there were certain funds on deposit in the office of the chamberlain of the city of New York, which might be collected by the company upon its claim against one Flora Sawyer. Negotiations were thereafter had resulting in the retainer of the respondent by the company for the purpose of making the collection, it being agreed that the respondent should receive forty per cent of the amount collected in payment for his services.

The respondent thereupon commenced a surplus money proceeding in the Supreme Court in which a referee was appointed to determine the ownership of the moneys on deposit with the city chamberlain. Thereafter, in the summer of 1915, the referee notified the respondent that he intended to report to the court that the Cornell Construction Company

was entitled to the money, but stated that he would not deliver his report until his fees, as referee, and disbursements, amounting in all to $218, were paid.

In November, 1915, the respondent informed Roberts of the status of the proceedings, and that he, the respondent, was unable to advance the money to cover the fees and disbursements of the referee. The matter was taken under consideration by Murray, Prentice & Howland, who, on November 10, 1915, sent respondent a check for $218, payable to his order, to cover the same. The respondent contended before the official referee that this payment to him was not specifically for payment over to the referee, but was to reimburse him when he should determine to pay the referee the sum due. He has apparently abandoned such claim before this court, however, and the evidence clearly shows that the check was delivered to the respondent for the specific purpose of enabling him to pay the referee and procure the filing of the report.

Instead of using the check for this purpose, the respondent concededly deposited it in his bank and used the proceeds as his own. His bank account, which was offered in evidence, shows that whereas his balance on the day he received the check amounted to only about $30, he immediately upon the deposit of the check drew and cashed checks aggregating $130. He made no payment whatever to the referee until January 12, 1916, when he gave him $120 in cash and his check for $98 drawn upon the Empire Trust Company. Whether this check was formally presented for payment and dishonored does not appear, but the respondent makes no pretense that he had sufficient funds on deposit to meet it, testifying that he told the referee, "Now, I will protect this check, and when this is done, why I want you to file the report."

After sending the check for $218 to the respondent, Roberts heard nothing further regarding the matter until January, 1916, when he learned through an attorney associated with the respondent in the proceeding that the referee had not filed his report for the reason that his fees and disbursements had not been paid in full. The respondent then admitted to Roberts that he had paid the referee only $120 in addition

to the check for $98, which had not been made good, and Murray, Prentice & Howland forthwith paid the referee the $98 still due. They were thereupon substituted as attorneys in the proceeding, and the $98 thus paid by them was deducted from the respondent's share of the recovery, amounting to about $700. It appears from the testimony of Roberts that the reason for the substitution was rather the pending entry of the order suspending the respondent than by his conduct in the proceeding, and that the subsequent details were conducted by the attorney whom the respondent had associated with him in the matter.

The respondent explains, and seeks to excuse his failure to promptly apply the proceeds of the check to the use for which it was given by the fact that a doubt existed in the mind of himself and his associate as to the soundness of the referee's conclusions, and by the fact that the pending disciplinary proceedings had disrupted his business and left him in a highly agitated state of mind. We are of opinion, however, that the circumstances disclosed present no excuse for the misconduct charged and proved. At the time of the receipt of the check, and unknown to his client, the learned official referee had already filed his report in the original proceeding, finding the respondent guilty of misconduct in procuring moneys from a former client, a poor woman ignorant in business matters, that he might acquire for himself an interest in a mining venture. In such a situation it might be expected that an attorney, however lax in the performance of his duties to clients theretofore, would observe most scrupulously the ethics of the profession in which his privilege to membership had thus been questioned. Instead, we find the respondent disregarding one of its most fundamental canons. Under no circumstances is an attorney warranted in using his client's money as his own. A breach of this rule is the pregnant source of most disciplinary proceedings.

It is not enough that the respondent may have intended to reimburse his client by the subsequent payment to the referee of the moneys due. Such an intent has been repeatedly held to be no excuse for an attorney's using his client's money as his own. Nor do we consider it important that the client, in the matter under consideration, was likely to suffer, and in

fact did suffer no injury as a result of the respondent's misconduct. Finding, as we do, that the respondent is guilty of the misconduct charged, it becomes our duty to appraise that misconduct, not with reference to the injury sustained by the client, but with reference to the respondent's fitness to remain a member of the bar.

Respondent has made a moving appeal for clemency. He asserts that although overwhelmed by disaster incident to his former suspension, with a large number of judgments piled up against him, he has refrained from taking advantage of the bankruptcy statute but has earnestly worked to reduce his indebtedness and has paid off a considerable part thereof, and will eventually pay in full. He further shows that his suspension, which was for six months, has by the institution of this proceeding been now extended for a year and four months and that he has suffered a severe punishment. We are impressed with his apparent sincerity and are of opinion that he has learned his lesson. We think there was no dishonest intention to convert his client's money in this last case, because he had an acknowledged equity in forty per cent of the amount in the hands of the chamberlain available immediately upon the confirmation of the referee's report. He improperly used the money intrusted to him for a specific purpose, but under all the circumstances we think a further suspension for six months, which will make two years in all, will be adequate, and it is so ordered, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

LAUGHLIN, SCOTT, DAVIS and SHEARN, JJ., concurred.

Respondent suspended for six months, with leave to apply for reinstatement as stated in opinion. Order to be settled on notice.